JOHN NEIL McNICHOLAS
STATE BAR #138304
McNicholas Law Office
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
(310) 545-0780
(310) 546-6831- FAX
john@mcnicholaslawoffice.com
Attorney JING DONG

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>vs.<br><br>USA HAPPY BABY INC.,<br>MICHAEL WEI YUEH LIU, AND<br>JING DONG,<br>                              Defendants. | Case No. 5:19-cr-00027-RGK-3<br><br>**DEFENDANT JING DONG'S SENTENCING MEMORANDUM**<br><br>**Date of Sentencing: December 16, 2024**<br>**Time of Sentencing: 10:00 a.m.** |

Defendant Jing Dong, by and through her attorney of record, John Neil McNicholas, hereby submits her sentencing memorandum. This sentencing memorandum is intended to assist in formulating a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a).

Dated this 9th day of December, 2024.

McNICHOLAS LAW OFFICE

/s/_____
JOHN NEIL McNICHOLAS
464 Palos Verdes Blvd.
Redondo Beach, CA 90277
(310) 545-0780
Attorney for JING DONG

# **TABLE OF CONTENTS**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     OBJECTIONS AND CORRECTIONS TO REVISED PSR. . . . . . . . . . . . . . . 3

III.    18 U.S.C. § 3553 FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    The Nature and Circumstances of the Criminal Offense. . . . . . . . . . . . . . 6

      B.    The History and Character of the Defendant. . . . . . . . . . . . . . . . . . . . . . . 7

      C.    U.S. Probation and the Government's  Application of Advisory Sentencing Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      D.    Ms. Dong's Unusual Mental and Emotional Struggles Justify a Variance From the Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.    A Significant Length of Time Has Passed since the Raid on March 3, 2015. Ms. Dong Has Lived a Law-abiding Life since That time . . . . . . . 11

      F.    Variance for an Otherwise Law Abiding Life. . . . . . . . . . . . . . . . . . . . . . 12

      G.    Avoiding Unwanted Sentencing Disparity . . . . . . . . . . . . . . . . . . . . . . . 13

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

DECLARATION OF JOHN NEIL McNICHOLAS . . . . . . . . . . . . . . . . . . . . . . . . 15

# **EXHIBITS**

Exhibit 1:    Letters from friends of Jing Dong

Exhibit 2:    Indictment in *United States v. Li*, 8:19-cr-00016-JVS

Exhibit 3:    Plea Agreement in  *United States v. Li*, 8:19-cr-00016-JVS

Exhibit 4:    Defendant's Sentencing Memorandum in *United States v. Li*, 8:19-cr-00016-JVS

Exhibit 5:    Judgment and Commitment order in *United States v. Li*, 8:19-cr-00016-JVS

# TABLE OF AUTHORITIES

**Federal Cases**

*Kimbrough v. United States*,
  128 S. Ct. 558 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pepper v. United States*,
  131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Baker*,
  502 F.3d 465 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Booker*,
  125 S.Ct. 738 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Munoz-Nava*,
  524 F.3d 1137 (10th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Robertson*,
  662 F.3d 871 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Williams v. New York*,
  337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) . . . . . . . . . . . . . . . . . . . . . 11

**United States District Court Cases**

*United States v. Li*,
  8:19-cr-00016-JVS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 14

*United States v. Page*,
  No. 04-cr-106, 2005 U.S. Dist. LEXIS 1952 (E.D. Wis. Aug 25, 2005). . . . . . . 13

*United States v. Ranum*,
  353 F. Supp. 2d 984 (E.D. Wis. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Federal Statutes**

18 U.S.C. § 1956(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 13
18 U.S.C. § 1546(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
18 U.S.C. § 2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**United States Sentencing Guidelines**

U.S.S.G. §2B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S.S.G. § 2L2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 9
U.S.S.G. § 2L2.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14
U.S.S.G. § 2L2.1(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
U.S.S.G. § 2L2.1(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
U.S.S.G. § 2S2.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8
U.S.S.G. § 2S2.1(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
U.S.S.G. § 2S2.1(b)(2)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
U.S.S.G. § 4C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
U.S.S.G. § 5H1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**News Release**

https://www.ice.gov/news/releases/federal-prosecutors-unseal-indictments-naming-19-people-linked-chinese-birth-tourism

# I. INTRODUCTION

On January 30, 2019, the government filed a 33-count indictment against Defendants USA Happy Baby Inc. ("USA Happy Baby"), Michael Wei Yueh Liu ("Mr. Liu") and Jing Dong ("Phoebe Dong" or "Ms. Dong") (collectively, "Defendants") with conspiracy to commit immigration fraud, wire fraud and money laundering, sixteen counts of wire fraud, ten counts of international promotional money laundering, three counts of aggravated identity theft, and three counts of unlawful transfer, possession, and use of means of identification.  Ms. Dong was arrested the following day. Although she was released on bond, Ms. Dong remained in federal custody until February 7, 2019. She spent the next 17 months on location monitoring. PSR, ¶12. She has been released on bond with standard restrictions ever since.

Prior to the trial in this matter, the government decided to dismiss all charges contained in the indictment against USA Happy Baby, and 23 of the 33 counts against Ms. Dong and Mr. Liu. The only charges remaining for trial were conspiracy to commit immigration fraud and international promotional money laundering in Count 1, and international promotional money laundering in counts 18-27. The trial commenced on September 10, 2024. On September 13, 2024 Ms. Dong and Mr. Liu were found guilty of all 11 counts pursued by the government at trial. Pursuant to the Court's order, Ms. Dong filed a motion for acquittal and for new trial on September 18, 2024. Those motions were denied. The current sentencing date is December 16, 2024.

In the Presentence Report (PSR) filed on November 4, 2024, and later in a revised PSR filed on December 4, 2024, U.S. Probation incorrectly applies the sentencing guidelines in this case. The analysis should not be based upon U.S.S.G. § 2S1.1(a)(2) and should not include U.S.S.G. § 2B1.1. The ten counts of conviction based upon 18 U.S.C. § 1956(a)(2)(A),were ancillary to the primary count of conviction, conspiracy to commit immigration fraud. This incorrect analysis unjustifiably emphasizes punishment for the means of payment for committing the offense (money laundering) over punishment for the actual offense (immigration fraud). If the Court applies this approach, defendants' sentences would be based upon overseas funds deposited into their accounts without any idea of the origin of those funds.[1] Ms. Dong had nothing to do with the $154,025 listed in Count 21 that were "laundered" from Taiwan. The balance of the overseas funds deposited into defendabnts' U.S. bank accounts were derived from fees earned and operating expenses for the business. There was no attempted concealment of proceeds by either defendant. The defendants paid taxes on their income derived from this business.

The government is correct in arguing that the guideline level should be based upon U.S.S.G. §§ 2S1.1(a)(1) and 2L2.1, because the underlying offense is immigration fraud. But the government's further analysis is flawed because no illegal

---

[1]Although this evidence was not introduced at trial, the largest "laundering" payment in Count 21 consisting of $154,025, came from Michael Liu's own account that he shared with his mother in his native Taiwan that was actual proceeds from the sale of a home in Taiwan, and was used to purchase a home for his elderly parents in California, and where the elderly parents both currently reside.

United States passports were obtained. And concluding that defendants caused at least 100 fake immigration documents requires significant speculation and which was likely not applied in the related case of *United States v. Li*, 8:19-cr-00016-JVS. See Exhibits 4 and 5.

## II. OBJECTIONS AND CORRECTIONS TO REVISED PSR

Objection to Paragraph 12: Ms. Dong remained in custody waiting for her bond to be secured for seven additional days following her detention hearing [Doc. 34].

Objection to Paragraph 18: Phoebe Dong and USA Happy Baby had no employees in China. They worked with no more than four Chinese agencies which included Yosemite and EZ-Go. (Admitted trial exhibits 601 and 603). EZ-Go and Yosemite's employees were not employees of USA Happy Baby.

Objection to Paragraph 19: This is not a true statement. Dong and Liu never assisted with flights or hotel bookings for customers. Further, no testimony or evidence from trial supports this misrepresentation.

Objection to Paragraph 21: No evidence was presented at trial or anywhere else to support the representation that somebody was directed to photograph herself as proof of passing through customs.

Objection to Paragraph 23: No evidence was presented at trial to support this position. The relevant apartment-related counts were dismissed prior to trial. Had these issues been litigated, we are confident that the government would have failed to prove that any apartment lessors were defrauded.

Correction to Paragraph 25: Cash collected from customers on arrival served as security deposits for the apartments. The deposit would usually be returned at the end of the lease.

Objection to Paragraphs 26, 27 and 33. The following representation is factually and legally incorrect. "Intent to violate these statutes was proven by transactions from the U.S. bank accounts to vendors of necessary merchandise on behalf of the company." Unlike other sections of the federal money laundering statute, § 1956(a)(2)(A) does not require the defendant know that the property involved constitutes the proceeds of unlawful activity.(internal citations omitted). *United States v. Carozza*, 608 Fed. Appx. 532, 535 (9th Cir. 2015). Pursuant to the above authority, the government stressed during the trial that the manner in which the international funds were obtained is irrelevant in this case. The government offered no proof as to whether the overseas funds were derived from illegal activities. What was relevant is what the defendants did with the money. That was the only way to prove that a violation of this statute occurred. The "international promotional laundering" was based upon money used to continue the scheme, like purchases of baby formula at Target.  A huge percentage of the funds that came into the defendants' accounts could have been lawfully obtained and it would have made no difference in the jury's verdicts. The amount deposited into defendant's bank accounts should not be considered in fashioning the appropriate sentencing guidelines. The appropriate guideline is U.S.S.G. §2L2.1.

Objection to Paragraph 36. See arguments regarding paragraphs 26, 27 and 33,

*supra*. The appropriate guideline is U.S.S.G. §2L2.1.

Ms. Dong asks to correct Paragraph 70. The couple actually moved to Los Angeles County in 2006.

Correction to expenses: Ms. Dong pays $297.21 in property tax per month on 17028 Colima Coad #104. Mr. Liu pays the mortgage and property tax for the Lisbon Place property.

Ms. Dong asks to correct Paragraph 96: "USA" Happy Baby.

Correction to Paragraph 102(a): Merill Lynch sent a check for $123,167.00 to Ms. Dong prior to closing the account.

Correction to Paragraph 102(d): Ms. Dong paid $270,000 to her prior attorney. She does not owe him anything.

Correction to Paragraph 104(e) The property located at 12367 Hollyhock Drive, Unit 4, Rancho Cucamonga, California was sold on February 26, 2018.

Correction to Paragraph 104(f): Wei Chien Liu and Demian John, the sister and brother-in-law of Michael Liu, are the owners of the property located at 1210 Everett Street, El Cerrito, California. This property is not related to Jing Dong.

Correction to Paragraph 104(g): The property at 3030 East Via Fiano, Ontario was sold to pay legal fees in this case.

## III. 18 U.S.C. § 3553 SENTENCING FACTORS

18 U.S.C. § 3553 (a)(2) requires that the sentence be "sufficient, but not greater than necessary," to fulfill the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and for the offense; (B) to

afford adequate deterrence to criminal conduct; ( C) to protect the public from further crimes of the defendant and (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

The sentencing guideline range is one of five factors to be considered in determining a defendant's sentence. *United States v. Booker*, 543 U.S. 220, 25 S. Ct. 738, 764-65 (2005). After *Booker*, Judges were directed to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentence available, the need to avoid unwarranted sentencing disparity, the need to deter and punish, and the need to provide restitution. 18 U.S.C. § 3553(a). Judges "may vary [from guideline ranges] based solely on policy considerations, including disagreements with the guidelines." *Kimbrough* v. United States, 552 U.S. 85, 128 S. Ct. 558, 570 (2007). "The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Id.*

## A. The Nature and Circumstances of the Criminal Offenses

The jury trial in this matter lasted about three days. The trial primarily consisted of documents found on a laptop and in other locations within defendants' home showing that pregnant mothers entered the United States after being instructed to misrepresent that the purpose of their visits was tourism, and not to have an American-born baby. One actual birth tourist, who is now residing in California testified for the prosecution, as did a few former USA Happy Baby employees. The

6

jury determined beyond a reasonable doubt that defendants engaged in immigration fraud because their customers lied on their immigration documents. Further, based only upon bank statements, the jury determined that on 10 occasions, funds received from overseas were received for the purpose of promoting the illegal venture.

**B.      The History and Character of the Defendant**

Jing Dong was born in 1976 in China, a country without democracy. She adopted the nickname "Phoebe" while attending college in Shanghai, China. From her birth until 2016, women who were pregnant with their second child would be forced by the government to have an abortion, commonly referred to as China's "one-child policy." She is a product of this policy, and has no brothers or sisters. Her mother was forced to abort another baby after giving birth to Ms. Dong.

Ms. Dong came to the United States with her husband, Michael Liu, and their only child at the time, in 2004. Their second child was born in 2006, and their third child was born in 2011. Her obstetrician and gynecologist introduced her to a pregnant woman in need of housing in California while she awaited the birth of her third child. Ms. Dong had a spare room in her condominium and allowed the woman to stay with her.

Ms. Dong learned that China's one-child policy caused so much harm to Chinese families, that parents were constantly seeking ways to escape, including giving birth overseas. Around 2011, Airbnb was not yet popular, and it was difficult for pregnant Chinese women coming to the United States to find a short-term  rental. After seeing the business opportunity, Ms. Dong slowly

started her shot-term rental business. In addition to renting to pregnant woman, she also rented rooms to people from the church who came to the area for short term travel.

Ms. Dong and Mr. Liu eventually created USA Happy Baby Inc. They rented apartments for subletting to their pregnant customers and their families. This led to relationships with Chinese-based companies like EZ-Go and Yosemite, who handled all business overseas, and allowing Ms. Dong to focus on taking care of the pregnant women and their babies.

The business came to an abrupt ending with the March 3, 2015 raid on their home and business properties. Ms. Dong's children were all young at the time. She still had to raise her three children while under investigation and indictment. She was and still is, a regular churchgoer. Unfortunately, her marriage to Mr. Liu collapsed following the indictment and subsequent arrests in this case.

As shown by the attached letters (Exhibit 1), Ms. Dong has impacted many people since arriving in the United States. One friend, C.W., stated the following: "Over the years, Phoebe has been not only a cherished friend, but also a devoted daughter to her parents and a loving, responsible mother to her children."

**C.    U.S. Probation and the Government's Application of Advisory Sentencing Guidelines**

U.S. Probation is incorrect in its sentencing guideline analysis. U.S.S.G. § 2S1.1(a)(1) requires that the Base Offense Level be the offense level for the underlying offense of immigration fraud because Ms. Dong committed the underlying offense of immigration fraud and the offense level can easily be

determined.

As the government stated in its sentencing memorandum, U.S.S.G. § 2L2.1 is the appropriate guideline in this case. It would be improper to go beyond this guideline. The Base Offense Level is 11. U.S.S.G. § 2L2.1(a).

The government is asking the Court to heavily speculate that the offense involved more than 100 documents. The government cites a Yosemite booklet (Trial Exhibit 48) found in the home of defendants where Yosemite boasted of its "experience in processing hundreds of Chinese moms traveling to the US to give birth." Even if defendants could be identified as "Yosemite," which they were not, the statement referenced was nothing more than a puff piece for the organization.

The only evidence at trial regarding false statements on immigration documents refers to an unindicted travel agency that was never charged and seemingly never investigated. If the government possessed actual evidence of at least 100 fraudulent documents involving defendants, they would have cited such proof. There is no way to know to whom any communication was made on behalf of defendants to commit immigration fraud; or which customers traveled without committing immigration fraud. There were several Chinese mothers on site when the government agents raided the property. It was unlikely that there were more than 24 mothers on site. The appropriate enhancement is 3 levels. U.S.S.G. § 2L2.1(b)(2).

The government also believes that 4 levels should be added because the American-born children obtained U.S. passports. U.S.S.G. §2L2.1(b)(5).Ms. Dong and her counsel disagree. Those children who obtained passports were lawful citizens of the United States of America. They were entitled to their U.S. passports, regardless

of how they obtained their passports. No increase is warranted regarding the U.S.-born citizens who obtained passports.

Ms. Dong agrees with the USPPO that a two-level increase is appropriate pursuant to § 2S1.1(b)(2)(B), because Ms. Dong was convicted under 18 U.S.C. § 1956. Revised PSR, ¶ 57.

Ms. Dong is entitled to a 2-level offense reduction pursuant to U.S.S.G. §4C1.1, as she has no prior criminal history.  Using this correct and simple analysis, Ms. Dong's Total Offense Level is 14. The appropriate advisory guideline sentence before considering any mitigating factors and variances is 15-21 months.

**D.      Ms. Dong's Unusual Mental and Emotional Struggles Justify a Variance From the Guidelines**

Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. U.S.S.G. § 5H1.3. Ms. Dong mentally struggled as a child, as a wife, and as a parent. Growing up, she felt verbally abused by her mother who occasionally exercised corporal punishment. At one point in her teenage years, Ms. Dong decided to run away. She was quickly found and returned. PSR, ¶¶ 65, 67. As a young mother she was depressed to the point where she had dangerous thoughts. She was medicated for her depression in recent years. See Revised PSR, ¶¶ 84-88. The stress of the instant case has been overwhelming for the family, particularly, Ms. Dong's eldest child. PSR, ¶ 72. The marriage between Mr. Liu and Ms. Dong has been destroyed. Now Ms. Dong is addressing the mental

anguish suffered by her two boys who were aboard Alaska Airlines Flight 1282 on January 5, 2024 when the door plug fell off at 16,000 feet and everyone aboard, including her sons, feared they were going to die. PSR, ¶ 73. Ms. Dong really has no support base in the United States.  She asks that the Court consider a variance for her emotional struggles and suffering.

**E.      A Significant Length of Time Has Passed since the Raid on March 3, 2015. Ms. Dong Has Lived a Law-abiding Life since That Time.**

"The punishment should fit the offender and not merely the crime.'" *Pepper v. United States*, 131 S. Ct. 1229, 1240, 179 L. Ed. 2d 196 (2011), *quoting Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). "Highly relevant — if not essential — to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 131 S. Ct. at 1235, *quoting Williams*, 337 U.S. at 247. This aim is codified in 18 U.S.C. § 3553(a), which requires that any sentence imposed be "sufficient, but not greater than necessary" to serve the sentencing goals of punishment, deterrence, protection of the public, and rehabilitation, and which requires the court to consider "the history and characteristics of the defendant." Adequate consideration of a defendant's evidence of rehabilitation fits squarely within these parameters. Demonstrated self-motivated rehabilitation is direct and relevant evidence of "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; [and to] provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(B)-(D). *United States*

11

*v. Robertson*, 662 F.3d 871, 878 (7th Cir. 2011).

Courts have sentenced below the guidelines where a defendant has performed exemplary while on pretrial release. *U.S. v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (in drug case where guidelines were at 47-56 months, district court's sentence of one year and one day in prison and one year of home detention is reasonable in part because defendant's behavior while on a year-and-a-half pretrial release, which the district court found to be "exemplary" shows the defendant is unlikely to re-offend); *U.S. v. Baker*, 502 F.3d 465 (6th Cir. 2007) (where defendant pled guilty to possession of unregistered  firearm arising from altercation with wife during which accidentally discharged and guideline range is 27-33 months, a below-guideline sentence of probation with one year of house arrest was proper in part because he behaved "exceedingly well" while under pretrial supervision).

Ms. Dong became a United States citizen in 2012. It has been nine years since the offense. It has been five years since Ms. Dong was arrested and spent eight days in federal custody waiting for her bond to be accepted by the Court. She spent a large portion of those 5 years subjected to location monitoring. Ms. Dong has been busy raising her three children. Two of them are currently in college. She is active in her church. She has been involved in starting a legal surrogacy business. She has performed so well on pretrial supervision, that the Court permitted terminated her location monitoring program and allowed her to travel to China to visit her ailing father.

**F.      Variance for an Otherwise Law Abiding Life**

The Court is asked to consider Ms. Dong's character for otherwise

praiseworthy life. While § 3553(a)(1) requires the Court to consider the character of the defendant, the guidelines account only for criminal history. In cases where the defendant lives an otherwise praiseworthy life, the Court should consider a sentence below the advisory range. *See, e.g., United States v. Page,* No. 04-cr-106, 2005 U.S. Dist. LEXIS 1952, at 12 (E.D. Wis. Aug 25, 2005); *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005). The letters from Ms. Dong's friends attached as Exhibit 1, exemplify her reputation as a helping, loyal, and trustworthy friend. There is no risk that she will re-offend.

## G. Avoiding Unwanted Sentencing Disparity

This case was part of large investigation involving other targets, in addition to USA Happy Baby Inc. Ms. Dong and Mr. Liu were the only people who declared their innocense took their matters to trial. The government charged Wen Rui Deng, a former Irvine resident who is believed to have fled to China, with operating Star Baby Care, a Los Angeles County-based operation that was believed to have been the largest birth tourism scheme in the U.S.[2] A third target was Donyuan Li who was indicted in *United States v. Li*, 8:19-cr-00016-JVS. Ms. Li was charged in 28 counts, similar to the charges against Liu and Dong, including the charges for violating 18 U.S.C. 1956(a)(2)(A)based on wire transfers from China to U.S. bank accounts in order to support the business. Ms. Li was also charged with visa fraud in violation of 18 U.S.C. § 1546(a) because Li actually engaged in false representations to U.S. immigration officials so that customers could stay long enough in the U.S. in order to

---

[2]https://www.ice.gov/news/releases/federal-prosecutors-unseal-indictments-naming-19-people-linked-chinese-birth-tourism

13

give birth to their babies. See Exhibit 2. Li entered guilty pleas to 1) conspiracy to commit immigration fraud and 2) visa fraud. In that case, the parties agreed to a Base Offense Level of 11, using U.S.S.G. § 2L2.l(a). [Doc. 65] (Exhibit 3). In that case, U.S. Probation opined that there was insufficient evidence to conclude that defendant's company was involved in more than 24 false visa applications. See Li's sentencing memorandum, 8:19-cr-00016-JVS [Doc 114], page 9 of 15 attached as Exhibit 4. Ms. Li was sentenced to 10 months imprisonment. *Id.*, Doc. 131 (Exhibit 5).

## IV. CONCLUSION

Jing Dong respectfully requests that the Court sentence her to a term of imprisonment of one year and one day, and that a significant portion of that sentence be served in home detention. If the Court is inclined to sentence Ms. Dong and Mr. Liu to a custodial term, Ms. Dong asks that the sentences be staggered so that at least one parent can act as guardian for their youngest child.

### **DECLARATION OF JOHN NEIL McNICHOLAS**

I, John Neil McNicholas, do hereby declare under penalties of perjury that the following is true.

1. I am an attorney, duly licensed in the State of California and admitted to practice in the United States District Court in the Central District of California.

2. I represent Jing Dong in the above-captioned matter.

3. A true and correct copy of seven letters from friends of Ms. Dong is attached hereto as Exhibit 1 and incorporated into this declaration and sentencing memorandum.

4. A true and correct copy of the indictment in *United States v. Li*, 8:19-cr-00016-JVS is attached hereto as Exhibit 2 and incorporated herein.

5. A true and correct copy of the plea agreement in *United States v. Li*, 8:19-cr-00016-JVS is attached hereto as Exhibit 3 and incorporated herein.

6. A true and correct copy of defendant's sentencing memorandum in *United States v. Li*, 8:19-cr-00016-JVS is attached hereto as Exhibit 4 and incorporated herein.

7. A true and correct copy of the judgment and commitment order in *United States v. Li*, 8:19-cr-00016-JVS is attached hereto as Exhibit 5 and incorporated herein.

DATED this 9th day of December, 2024 in Redondo Beach, California.


/s/ *John Neil McNicholas*
JOHN NEIL McNICHOLAS

15